(No. 18276.—

THE YELLOW CAB COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ELLA LEWIS FETTY, Defendant in Error.)

*Opinion filed December 20, 1928.*

HENRY L. KANE, for plaintiff in error.

JOHN A. BLOOMINGSTON, and JAMES A. TRACY, for defendant in error.

Mr. COMMISSIONER CROW reported this opinion:

This case comes to this court by writ of error to the superior court of Cook county to review a judgment of that court confirming an award of the Industrial Commission for

compensation for the death of Roy E. Fetty, an employee of plaintiff in error. The injury resulting in death was received by Fetty while in the course of his employment as a taxi driver. The application for adjustment of compensation was filed by Ella Lewis Fetty, the mother of decedent, averring that the injury resulting in his death occurred on September 21, 1923; that surviving him were his father, mother, brother and sisters, who were dependent upon him for support. An arbitrator assigned by the commission to hear the case filed his decision March 11, 1924, finding that petitioner was entitled to have and receive from respondent $150 for burial expenses, as provided in paragraph (e) of section 7 of the act, and that petitioner was not dependent on decedent for support. On review of the decision of the arbitrator the Industrial Commission approved the report and finding on January 5, 1925. On July 30, 1925, the record of the commission was before the circuit court of Cook county upon *certiorari,* and an order was entered finding that Fetty left dependents entitled to compensation and ordering that the award of the commission be set aside and that the cause "be sent back to the commission with instructions to find from the evidence in the record as made, the amount of compensation to which the dependents are entitled and to make an award in favor of said dependents in accordance with their findings and to re-certify same to this court, the court retaining jurisdiction for that purpose." On February 24, 1926, the commission made a decision, without hearing further evidence, ordering respondent to pay to petitioner the sum of $12 per week for a period of 139 weeks, and the sum of $6 for one week, as compensation on account of the death of Fetty, payments to commence on the day after the accident. To review that decision respondent sued out a writ of *certiorari* from the superior court on March 15, 1926. The cause came on for hearing upon the record of the commission filed as the return to the writ on January 25, 1927, and the superior court

confirmed the award. The ground averred as the basis for compensation was the dependency of the petitioner, and the father, brother and sisters of decedent, on him for support. Decedent was a son of petitioner by a former marriage.

There is no controversy as to the facts. The petitioner is a married woman living with her husband. He owns a homestead of 160 acres of land in cultivation in the State of Nebraska, worth $15,000. There is a mortgage on the land. His equity in the farm is worth approximately $8000. He has horses, hogs, cattle, farm implements, an automobile, and a bank account. He pays all bills, including family expenses, by checks drawn against his account. He also has a savings account. A daughter teaches school at a salary of $70 a month. He borrowed $3000 from the bank without security. Petitioner signs her husband's name to checks against his bank account. About the time of decedent's death the father was building a new home, costing $7000, the old home having burned. It was insured. When decedent made application to respondent for a position he made a statement in writing as to his obligations, for the purpose of obtaining employment. He stated that no one was dependent upon him for support. This was only a few weeks before he received his fatal injury. With his application for employment a signed statement was made by his brother, Homer, in which he stated that no one was dependent upon decedent for support and that he was not contributing to the support of anyone that he knew of. At the inquest before the coroner Homer testified under oath that decedent had a high school education, that he had no one dependent upon him for support, and that he was not sending any money to his folks. The coroner asked him, "Did he send money to his folks—his mother?" and Homer answered, "I don't know about that; I do not think so." At the hearing before the arbitrator Homer testified to various sums of money having been sent by decedent to his mother. The evidence shows that decedent was a chauf-

feur for the Yellow Cab Company for about three months previous to his death. For two and one-half years he moved from place to place and did not have steady employment. One time he worked three months and another time seven weeks for the Western Electric Company. This was all the work he did, except for the Yellow Cab Company, so far as the evidence discloses, for two and one-half years before his death. His room rent and meals were paid for by his friends. He borrowed money from time to time for gambling purposes and generally lost it. One of his intimate friends who lent him money and paid his room rent, testified that after he had worked for the Western Electric Company six weeks, beginning in January, 1923, he started hanging around a "gambling joint" and picked up a few dollars now and then. That was the way he was making his living. He lived with witness at a hotel and did not pay his rent all the time. During three months witness paid his rent for five weeks and another companion paid it for the rest of the time. He paid witness $11 of the $25 he owed. Witness never talked to him about his folks, but he told witness they were "well off." When he drew his pay he paid witness what he owed him, with the exception of room rent, and went to a gambling house to try his luck at shooting craps. Another witness knew decedent for two years before his death. He borrowed money from witness eight or ten times. They were rooming together, and witness bought lunches for him on an average of two or three times a week. Sometimes he asked witness for money two or three times a week. From September, 1921, until April, 1923, he did not work except in a gambling place. He and witness were on friendly terms and went out every night. They would meet in the pool room. He got odd jobs around the pool rooms, for which he was paid three dollars a day, and worked three or four days a week. Witness "would not say he was broke a few times—he was broke all the time." Other witnesses testified to the same

effect. Rozanas, a mechanic for the Western Electric Company, knew decedent well and detailed his employments and failures. He corroborated the testimony of the other witnesses that decedent "was always broke." He gambled, and won and lost. The greater part of the time he lost. The money he borrowed he used to shoot pool. "Everybody helped him along." He bought only one suit of clothes. His brother testified that when decedent was short of money and could not pay for his room he lived at his home. He testified that decedent worked for the Western Electric Company as long as he could remember, and that was a couple of years. The evidence clearly shows that is not true.

To sustain the award made by the commission it is necessary that two propositions be established: One that the mother of decedent was dependent on him for support; the other, that he contributed in a substantial manner to her support in her dependent condition. Generally, the question of dependency is one of fact. Those dependent upon an employee killed by an accidental injury sustained while in the course of and arising out of his employment belong to a class entitled to compensation. The right to relief is purely statutory. If the condition or relation authorizing an award of compensation does not exist, the award, as matter of law, cannot be sustained. In the case at bar the ground for recovery was that the mother of Roy E. Fetty was dependent upon him for support and that in life he contributed to the relief of her dependent condition. While dependency is generally a question of fact, one claiming an award as a dependent upon another must show by the evidence that she was sustained by or relied for support on the aid of the other, or looked to him for support and relied on him for reasonable necessaries consistent with the dependent's position in life, (*Alden Coal Co.* v. *Industrial Com.* 293 Ill. 597,) and that she was to a substantial degree supported by the employee at the time of his death. *Pratt Co.* v. *Industrial Com.* 293 Ill. 367; *Keller* v. *Indus-*

*trial Com.* 291 id. 314; *Peabody Coal Co.* v. *Industrial Com.* 311 id. 338; *Lederer Co.* v. *Industrial Com.* 321 id. 563. See, also, *Wedron Silica Co.* v. *Industrial Com.* 312 Ill. 118.

If the evidence were sufficient to show that Fetty sent money to his mother, it does not show the other essential element of her right to the award—that she was dependent upon him. She was living with her husband and was supported by him. While they had a large family, it was amply supported by products of the farm and by money derived from such products. They had a substantial annual surplus from those products. In addition, hogs, poultry and cattle contributed to their support. There is no controversy as to those sources and elements of the mother's maintenance and support. It is not necessary in this case, as in the *Alden Coal Co. case, supra,* to rely on the presumption that her husband sustained and supported her. The evidence establishes the fact. The evidence sustaining that fact, her right to recover compensation becomes purely a question of law. She was not, as matter of law, entitled to the award of compensation made by the commission, except to the extent of $150 allowed by the act for funeral expenses.

Counsel for petitioner justify the order of the superior court approving the award of the commission on the ground that it could not sit in review on the finding of the circuit court. The answer to this contention is, the superior court was not asked to review the finding or order of the circuit court. The latter court set aside the order of the commission and remanded the record to it, with instructions "to find from the evidence in the record as made, the amount of compensation to which the dependents are entitled," and to make an award accordingly. Under the undisputed evidence and the law applicable to it, petitioner was not dependent on decedent and was not entitled to an award as a dependent. The proceeding upon *certiorari* in the superior

court was for the purpose of quashing the award of the commission, made as directed by the circuit court. The superior court did not decline to set aside the award and pass on the merits because it believed the award was right, but, as the judge said in his written order, because he "refuses to in any way interfere with any decision of the circuit court in a cause once before it under the Workmen's Compensation act."

Subdivision 2 of paragraph (f) of section 19 of the Compensation act reads: "The court may confirm or set aside the decision of the Industrial Commission. If the decision is set aside and the facts found in the proceedings before the commission are sufficient, the court may enter such decision as is justified by law, or may remand the cause to the Industrial Commission for further proceedings and may state the questions requiring further hearing, and give such other instructions as may be proper." It can not be plausibly contended that the facts found in the proceedings before the commission are sufficient to justify the award made by it. Before the court could legally enter a decision that petitioner was dependent upon decedent the facts found must be sufficient to justify it.

When the circuit court entered the order setting aside the first award and sent the record back to the commission, with directions "to find from the evidence in the record as made" the amount of compensation to which the dependents are entitled and to make an award in their favor in accordance with its finding, it exhausted its jurisdiction. There was no occasion to certify the record back to the circuit court after the award was changed and no warrant in law for the requirement. The award, when made as directed, became the award of the commission and subject to review as the statute prescribes. The writ of *certiorari* having been sued out of the superior court, that court was authorized to review the decision of the commission. The commission was bound to follow the directions of the cir-

cuit court, but this court is not bound by such direction and on this hearing may determine the questions of law and fact according to our own judgment. *Raffaelle* v. *Industrial Com.* 326 Ill. 166.

The judgment is reversed and the cause remanded to the superior court with directions to set aside the award and remand the cause to the commission, with directions to make an award for $150 for burial expenses.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*